### 10990

PERCIVAL *ET AL.* v. FARIS *ET AL.*

SAME v. ELMORE *ET AL.*

SAME v. FARIS

(113 S. E. 353)

1. TELEGRAPHS AND TELEPHONES—INSTRUMENT HELD NOT TO CONVEY EXCLUSIVE RIGHT TO USE TELEPHONE POLE—An instrument executed without consideration, giving a · voluntary mutual telephone company the right to construct telephone lines across land, *held* not to give the company an exclusive right to use its poles erected on the land.

2. EQUITY—MAXIM, "ONE SEEKING EQUITY MUST DO EQUITY," APPLIED.—Where a voluntary mutual telephone company was given, without consideration, the right to erect · a telephone line across another's land, to be entitled to restrain the present owners of this land from interfering with the line, under the principle that one seeking equity must do equity, this company must permit these owners to use its poles in erecting another telephone line across the land in question.

Before McIVER, J., York, November, 1920. Appeal dismissed.

Separate actions by W. L. Percival *et al.* against W. W. Faris *et al.,* Wade O. Elmore and S. H. Faris. From decree dismissing each action plaintiffs appeal.

The decree of Judge McIver in the Court below was as follows:

Hon. Ernest Moore, resident Judge of the Sixth Circuit, upon the pleadings and affidavits exhibited before him, issued a temporary injunction restraining the defendants above named from interfering with a certain telephone line

known as the "Bethesda telephone line," which ran over and across the premises belonging to the said defendants.

The cause came on to be heard before me on the merits at York at the November term of the Court. Upon due notice, a motion to frame the issues to be submitted to the jury was made, but before this motion was heard counsel for the plaintiffs and the defendants stated in open Court that they had agreed upon all matters involved in the controversy, except one issue, to wit: That since the plaintiffs had borne the costs of erecting the poles and stretching the wire thereon over the lands of the defendants, upon what terms and conditions should the defendants be allowed to place cross-arms upon the poles and stretch additional wires thereon, to afford them connection with the telephone exchange in the City of Rock Hill.

After a full statement of the facts and argument from counsel pro and con, I stated that, in my opinion, inasmuch as the privilege granted to the plaintiffs by the former owners of the land, now owned by the defendants, was wholly without consideration, in obedience to the principles of equity, that he who seeks equity must do equity, the plaintiffs must permit the defendants to stretch their wires upon the poles, provided the said defendants should place additional cross-arms thereon so that the wires of defendants would not in any way interfere with the wires of the plaintiffs, or in any way violating the privacy of any conversation over the plaintiffs' wires, or place any additional burden thereon, and the placing of these cross-arms and wires to be wholly at the cost of the defendants, and that the said defendants were thereafter to bear their proportionate part of maintaining the said line as hereinafter stated.

Before the decree, however, was prepared embodying this agreement between the parties, counsel for plaintiffs moved to reopen the matter on the ground that their clients were dissatisfied with the agreement entered into by their counsel, and contended that their said counsel had acted

without authority. Counsel for defendants consented that the matter be reopened and heard before me upon the entire record, together with any additional testimony which either side might offer in Court.

In 1905, certain landowners in the County of York, State aforesaid, executed and delivered a certain instrument to J. P. Williamson and others, of which the following is a copy: "For and in consideration of ———— dollars, we hereby relinquish unto J. P. Williamson, J. M. Byers, and others, of York County, State of South Carolina, their successors and assigns, a right of way for poles of their telephone line in and through our lands, lying and being in York County, and hereby bind ourselves, and our heirs, executors, and administrators, and all persons whomsoever lawfully claiming, to forever protect this deed of right of way. Witness our hands and seals this August 2, 1905, in the presence of F. Lee Irwin."

This paper was not under seal nor probated, and some of the lands covered by the above instrument were thereafter conveyed to the defendants herein. In 1905 the plaintiffs constructed a telephone line from a point near Bethesda Church, in York County, to Steele's Crossing, for the purpose of obtaining a connection with the telephone exchange in the City of Rock Hill, and this line was constructed across the lands now owned by these defendants. The construction of the instrument above quoted concerns only the defendants, W. W. Faris, Lillie I. Faris, and W. O. Elmore.

Counsel for the plaintiffs admitted in open Court, and the testimony shows, that John H. Steele had obtained a right of way or an easement from the landowners to erect a line from his residence to Steele's Crossing, a distance of about three miles, and that he has never granted or assigned this right of way or easement to any one, nor in any way relinquished his rights over same, but permitted the plaintiffs in the year 1910 to use the said pole lines, along

with himself, and any others in that community like situated, and this right was given to the plaintiffs, as the poles and lines were run over and across the premises of the said S. H. Faris, and is a different line altogether from the one heretofore referred to in the written instument above shown.

It also appeared from the testimony that the names of the plaintiffs, John Aycock, Clarence Merritte, and W. A. Neely, were used without their consent, and that they desire that the defendants be allowed to use the pole lines upon terms. Another plaintiff, Fred R. Black, did not appear at the hearing either by affidavit or in person. An affidavit was submitted by John H. Steele, who had permitted plaintiffs to use his pole line for a distance of about three miles, as aforesaid, stating in substance that he had allowed plaintiffs the joint use with himself of the pole line from his residence to Steele's Crossing, but such use was not to be exclusive to the plaintiffs, and that the plaintiffs were on his line only by sufferance, although they had expended some money in repairing and improving the line; that the said John H. Steele had no objection whatever to the defendants joining on this line, and, in fact, the line was for the use of all respectable white persons in the community, like situated, who desired connection with the telephone exchange in the City of Rock Hill.

It was shown by numerous affidavits that the defendants are white men of the highest standing and excellent citizens, who had recently moved into the community and purchased real estate. The telephone line in question begins at Steele's Crossing, about two or three miles from the City of Rock Hill, where it is joined on to the telephone exchange in the City of Rock Hill, and from there it traverses a rural community, in which there are a great many respectable white people, owning their own homes and living there, and it is at present a line of probably ten or twelve miles in length. The defendants live between the terminus and the begin-

ning of this line, and the furthest defendant above three or four miles from the said Steele's Crossing, and all of the plaintiffs live further from the said Steele's Crossing than any of the defendants.

It appears by the testimony that, so far as the land affected by the written instrument was concerned, it was subsequently sold by the owners to the present defendants. The plaintiffs contended that they were entitled to have the injunction made permanent, under the principle laid down in the case of *Meetze v. Railroad Co.,* 23 S. C., 1. The written instrument herein referred to is not an easement. It reads: "To Williamson, Byers, and Others." At that time the Bethesda Telephone Company, and in fact no company, was organized until some months later, after the execution of this written instrument. The intention of those who executed that paper was to grant a right of way for a community telephone, and it was intended to allow the privilege of joining on to it of all respectable white men who would pay their proportionate part of maintaining the line and the costs incident to the construction and erection of the telephone line, and from all of the testimony I am of the opinion that it was never intended to exclude those from whom these defendants derived their title, and John H. Steele expressly says that in granting the plaintiffs permission to join on to his poles he never intended to grant them exclusive permission, and the plaintiffs admitted that they did not have the exclusive right to the use of the poles and line of John H. Steele, and, so far as this three miles of the said telephone line is concerned, there can be no question but that John H. Steele has the right to allow them to join on to it or to make them remove their poles from his land.

It seems to me that it would violate the principles of equity to hold that the plaintiffs, who obtained a right of way free of charge across the lands of these defendants, should withhold from them the privilege of connecting

themselves with this telephone system, when it involved no costs or additional burden on the plaintiffs. In fact, one of the plaintiffs, Mr. Bookout, in his testimony before me, stated that he thought it would be fair to allow a person through whose lands the lines passed, without payment of a license, to be permitted to join his wires to the poles of the person or persons erecting such poles. The plaintiffs further admitted, and properly so, that they have no exclusive right over the three miles of line originally erected by John H. Steele over the lands owned and controlled by him, and particularly of this land now owned by the defendant, S. H. Faris, and on which lands the plaintiffs are maintaining their line only by sufferance of the said John H. Steele, and it certainly does not lie in the mouths of plaintiffs to say that Steele cannot control and use his own property as he sees fit. Therefore no order that I could grant would in any way affect the right of the defendant, S. H. Faris, as he enjoys the same rights as John H. Steele enjoys.

It is ordered, adjudged, and decreed that the defendants be allowed the use of the poles, along with the plaintiffs, now erected across their lands, upon the defendants placing cross-arms, and the proper stretching of their own wires on such cross-arms, and the proper stretching of the wires now stretched by the plaintiffs upon such cross-arms properly insulated from the said John H. Steele's to the residence of the furthest defendant, to wit, W. O. Elmore, and without cost to the plaintiffs. I therefore conclude that thereafter such defendants as accept this privilege bear their proportionate part of the cost of the maintenance of the said line from the residence of the furthest defendant, W. O. Elmore, to the said Steele's Crossing.

It is further ordered that, if the plaintiffs do not accede to this, then the defendants herein shall have the right to take over and use such poles as are now on their lands, or move them off of their lands. Within five days from the

filing of this decree the plaintiffs shall elect, in writing, to the defendants, or to their attorneys, whether or not they accept the terms hereof, and, failing to accept the same, or notifying the defendant, or their attorneys, as aforesaid, within that time, the defendants shall have the right to take over all poles of the plaintiffs now on their lands, and make such use of them as they may see fit.

The temporary injunction heretofore granted by his Honor, Ernest Moore, against the defendants herein, be and it is hereby dissolved, and a permanent injunction asked for by the plaintiffs be and it is hereby refused.

*Messrs. Spencer, Spencer & White,* for appellants, cite: *When verbal grant of use of land will be binding*: 23 S. C., 15; 17 R. C. L., 578; 22 A. L. R., 234; 18 A. L. R., 387; Ann. Cas., 1913C, 62; Ann. Cas., 1914C, 911; 90 A. S. R., 611; Ann. Cas., 1912A, 1177; 31 S. C., 154; 105 S. C., 319; 72 S. C., 228; 19 C. J., 939.

*Mr. John R. Hart,* for respondent, cites: *Verbal license does not bind grantee of original owner:* 54 S. C., 434.

August 17, 1922.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The following statement appears in the record:

"The above entitled actions were brought by the plaintiffs, constituting a voluntary association, known as Bethesda Mutual Telephone Company, against the several defendants named, on April 28, 1920, for the purpose of enjoining the defendants from interfering with the operation of the telephone system over their land. Upon a hearing before his Honor, Ernest Moore, at Lancaster, S. C., on or about the 20th day of May, 1920, a temporary restraining order was made by Judge Moore, enjoining the defendants from in any manner interfering with the plaintiff's tele-

phone lines, pending the hearing and determination of the several cases upon their merits. At the November term of the Court of Common Pleas at York, S. C., the cases were tried before Judge Edward McIver, by agreement of counsel, upon the verified complaints, returns, and affidavits, which had been submitted by both sides at the hearing before Judge Moore in May, and upon the additional testimony taken down by the Court stenographer at the trial. The three cases entitled above were not consolidated, but it was agreed that the evidence offered be applied to any or all of the actions, so far as applicable and relevant. So far as the case against S. H. Faris was concerned, plaintiffs' attorneys admitted in open Court that their client's right of way over these lands was not exclusive, and that John H. Steele, their grantee, had the right to admit others to the use of the poles used by them, but the admission extended no further. After considering the case, his Honor, Judge Edward McIver, filed a decree in which he vacated the temporary restraining order previously made by Judge Moore, granted the defendants certain equitable rights, and refused the permanent injunction asked for by the plaintiffs and dismissed the action."

The plaintiffs in due time served notice of intention to appeal from this decree, and also case and exceptions. We quote from the decree of the Circuit Court as follows:

"The case came on to be heard before me on the merits at York. Upon due notice, a motion to frame the issues to be submitted to the jury was made, but before this motion was heard counsel for the plaintiffs and the defendants stated in open Court that they had agreed upon all matters involved on the controversy, except one issue, to wit: That since the plaintiffs had borne the costs of erecting the poles and stretching the wire thereon over the lands of the defendants, upon what terms and conditions should the defendants be allowed to place cross-arms upon the poles and

stretch additional wires thereon, to afford them connection with the telephone exchange in the City of Rock Hill.

"After a full statement of the facts and argument from counsel pro and con, I stated that, in my opinion, inasmuch as the privilege granted to the plaintiffs by the former owners of the land now owned by the defendants, was wholly without consideration, *in obedience to the principles of equity, that he who seeks equity must do equity, the plaintiffs must permit the defendants to stretch their wires upon the poles, provided the said defendants should place additional cross-arms thereon so that the wires of defendants would not in any way interfere with the wires of the plaintiffs, or in any way violating the privacy of any conversation over the plaintiffs' wires, or place any additional burden thereon, and the placing of these cross-arms and wires to be wholly at the cost of the defendants, and that the said defendants were thereafter to bear their proportionate part of maintaining the said line, as hereinafter stated.*

"Before the decree, however, was prepared embodying this agreement between the parties, counsel for plaintiffs moved to reopen the matter on the ground that their clients were dissatisfied with the agreement entered into by their counsel, and contended that their said counsel had acted without authority. Counsel for defendants consented that the matter be reopened and heard before me upon the entire record, together with any additional testimony which either side might offer in Court."

The third exception is as follows:

"Because his Honor erred in holding that the written instrument executed and delivered by J. M. Byers, W. J. Caveney, and others to J. L. Williamson and others, dated August 2, 1905, did not grant an easement to them over their lands, but that the intention of the parties was to grant a right of way for a community telephone, with the privilege to all respectable white men of joining on to it; the error being that there was no evidence to sustain such a

construction of said written instrument, and, on the contrary, the evidence shows conclusively that said instrument was intended to grant an easement or right of way for a telephone line to the plaintiffs alone, their successors or assigns, who formed the association known as the Bethesda Telephone Company."

For the reasons stated by his Honor, Judge McIver, in his decree, which will be reported, this exception is overruled.

This Court is satisfied that he stated correctly the rights and equities of the parties to the actions, when he used the language which we have italicized. Having reached these conclusions, the other questions presented by the exceptions are merely academic.

Appeal dismissed.